Hamm, J.
This is a proceeding under article 78 of the Civil Practice Act to review and annul a determination of the zoning board of the City of Kingston. The petitioner in this proceeding is the owner of property adjoining the property in issue. The mention of “ petitioner ” hereafter will be intended to designate the petitioner before the board and not the petitioner in this proceeding. The latter will not again be mentioned.
The Kingston Zoning Ordinance was enacted on August 8, 1928. On the property here involved a gasoline station was maintained prior to the enactment of the ordinance and it has been operated continuously to the present time. By the ordinance the property as zoned is residential. The zoning is, of course, subject to the nonconforming use.
On June 8,1955, an application was made to the zoning board for a certificate of occupancy for the purpose of converting the property to a retail store. At that meeting the chairman of the board stated: “ The property of the petitioner, Mr. Southard, is located in a residential area classified as a non-conforming property, presently occupied as a gas station. * * * Under the Zoning Law, a non-conforming property where a structure is demolished your non-conforming use ends, especially with your changing from a gas station to a retail store. * * * Your proper procedure is to petition the Common Council for a change of that.” Thereafter an application was presented by the petitioner to the common council of the City of Kingston for a change of the zone of the property from residential zone to a business or commercial zone. The common council denied the application. Thereafter and on July 13,1955, a further petition was presented to the board for a change from a nonconforming use as a gasoline station to the use of the premises for the sale of ice cream. The original petition of June 8th and the subsequent petition of July 13th are referred to in the decision of the board as follows:
*882 The original petition (June 8, 1955) o£ the Carvel Realty Stores Corp., for a change of zone from a nonconforming use to a business use was denied by the Zoning Board on the ground that it did not have jurisdiction or power to grant the application. An application was then presented by the Petitioner to the common council of the City of Kingston requesting a change of zone of the Southard property from a nonconforming use to a business or commercial use. The common council denied the application on the ground that it would constitute a serious traffic hazard to convert the Southard property to a business use for the production and sale of ice cream.
At the July 13, 1955, meeting of the Zoning Board another petition was presented by the Carvel Stores Realty Corp., for a change from a nonconforming use of the Southard property occupied as a gasoline station to the sale of ice cream on the premises with a request that the property be demolished and an appropriate store erected, plans of which were submitted to the Zoning Board and provided off street parking on the Southard property. This is the petition which the Board is now required to consider.
At an adjourned meeting on August 10, 1955, the petitioner sought to supplement orally its petition to state in substance that the action of the common council in denying its application was confiscatory and illegal and beyond the scope of its authority.
Thereafter the board made the following findings and conclusions:
Findings of fact
1. That the Southard property on the northeast corner of Albany and Foxhall Avenue now occupied and operated as a gasoline station is within a commercial area and said property is designated on the Kingston Zoning map as a nonconforming use property.,
2. That the Southard property has always been maintained as a commercial property (gasoline station) prior to the enactment of the Kingston Zoning Ordinance (August 5, 1928) and has been operated continually to the present date.
3. That the petitioner, Carvel Stores Realty Corp., have entered into a contract with Southard for the purchase of the property provided same can be used for the sale of ice cream.
4. That the protestants contend that the operation and maintenance of an ice cream store on said premises would constitute a serious traffic hazard.
5. That the area of Albany Avenue from the comer of Foxhall Avenue on the easterly and westerly side of Albany Avenue towards the city line is now a commercial district.
6. That over a period of years through the action of the common council of the City of Kingston by “ piece meal ” or “ spot zoning ” the residential district in the immediate vicinity of the Southard property on Albany Avenue had been converted to commercial use and the district is no longer a residential district.
Conclusions of law.
Upon the basis of the foregoing Findings of Fact and upon the record made in the proceedings, the Zoning Board finds and concludes as matters of law:
(a) The property, the subject of this controversy cannot be classified as a nonconforming use property since same now conforms to the district as a commercial property by operation of law.
(b) That the petitioner as purchaser under the contract with Southard is an interested party in this proceeding and possesses a legal right to petition the Zoning Board for the relief requested.
*883 (e) That the zoning board of the City of Kingston by powers granted under article 5-A of the General City Law of the State of New York have jurisdiction to grant the petitioner’s application to operate and maintain an ice cream shop on the Southard property.
(d) That the action of the Common Council in restraining the use of the property as an ice cream store is unlawful, discriminatory, confiscatory and unconstitutional.
(e) That subdivision 12 of section 6 of the Kingston Zoning Ordinance “ Business District Use Provisions ” provides that within any business district as indicated on the Building Zone Map the maintenance of a “ ice cream shop ” is permissible.
(f) The board contends that the erection and operation of an ice cream shop as provided under subdivision 12 of section 6 under the Kingston Zoning Ordinance is permissible since by operation of law the Southard property is no longer a nonconforming use property and conforms to the commercial district. •The board contends that the Certificate of Occupancy be granted.
Section 3 of the Kingston Zoning Ordinance provides: ‘ ‘ Except as hereinafter provided, no building or premises shall be used except in conformity with the provisions of this ordinance, which apply to the district in which it is located. However, any non-conforming use existing at the time of the passage of this ordinance may be continued or changed to another non-conforming use which is no more harmful or objectionable in the opinion of the Zoning Board, hereinafter provided for, provided that the building or premises involved shall not be structurally altered or enlarged, unless the use thereof is to be changed to a use permitted in the district.”
Subdivision (d) of section 10 of the Kingston Zoning Ordinance further provides:
“(d) Where there are practical difficulties in the way of carrying out the strict letter of any provision of this ordinance or where unnecessary hardship would thereby result to owners of property, the Zoning Board shall have power in specific cases, after due notice and public hearing, and subject to appropriate conditions and safeguards [to] determine and vary the application of the regulations herein established in harmony with their general purpose and intent without changing the boundaries of the respective zones as follows:
“ (1) The extension of an existing non-conforming building or the erection of a supplementary building on the same parcel under such conditions as will safeguard the character of the district and of adjacent districts. * * *
“ (4) Vary any requirement of this ordinance in harmony with its general purpose and intent so that substantial justice may be done. This authority shall be exercised solely in instances where there are particular difficulties or unnecessary hardships in the way of carrying out the strict letter of this *884 ordinance, and in a manner to secure the public health, safety and general welfare.”
However, it is apparent that the decision of the board was not based on the provisions of the zoning ordinance. The board in its decision states that “ the erection and operation of an ice cream shop * * * is permissible since by operation of law the Southard property is no longer a non-conforming use property and conforms to the commercial district ”, basing its conclusion evidently on the prior statement contained in its decision that1 ‘ the action of the Common Council in restraining the use of the property as an ice cream store is unlawful, discriminatory, confiscatory and unconstitutional ”.
The board was without power to declare the ordinance unconstitutional or invalid (Matter of Romig v. Weld, 276 App. Div. 514; Matter of Smith v. Hartman, 208 Misc. 880; Matter of Diocese of Rochester v. Planning Bd., 1 A D 2d 86). It seems that in the cases mentioned the petitioner requested the zoning board or its equivalent for a variance and, after denial, sought to attack the constitutionality of the ordinance at Special Term. However, since a court may not review the action of a legislative body by a proceeding in the nature of certiorari (Matter of Buckley v. Fasbender, 275 App. Div. 853; Matter of Frontuto v. Board of Trustees of Vil. of East Rochester, 276 App. Div. 1055), it follows a fortiori that a zoning board may not declare an ordinance unconstitutional or invalid on a petitioner’s application. It seems that, as to invalidity of the ordinance, the petitioner’s remedy is an action for declaratory judgment or a direct attack in a mandamus proceeding (Matter of Smith v. Hartman, supra, p. 887; Matter of Diocese of Rochester v. Planning Bd., supra).
However, there is an issue as to whether the petitioner is entitled to relief under his application of July 13, 1955, for the substitution of a different nonconforming use for an existing nonconforming use pursuant to the provisions of the zoning ordinance, which have been quoted. But there is no statement, of a factual basis for a determination in favor of the petitioner based not on the invalidity of the ordinance but rather on its provisions. If the petitioner is to be granted a variance for a change of nonconforming use, there must be findings to support the determination (Matter of Barry v. O’Connell, 303 N. Y. 46, 51; Matter of Nathanson v. Adams, 207 Misc. 572, 577; Matter of Jackson v. Rohan, 1 A D 2d 89).
It was stated in this judicial department in Matter of Gilbert v. Stevens (284 App. Div. 1016) where review of granting of a *885 variance was before the court: “ Findings of fact which show the actual grounds of a decision are necessary for an intelligent judicial review of a quasi-judicial or administrative determination. (Matter of New York Water Service Corp. v. Water Power & Control Comm., 283 N. Y. 23; Matter of American Seminary of Bible v. Board of Stds. & Appeals of City of N. Y., 280 App. Div. 792; Matter of Aisloff v. Board of Stds. & Appeals of City of N. Y., 276 App. Div. 907; Matter of Scudder v. O’Connell, 272 App. Div. 251.) ”
Accordingly, the determination is annulled and the proceeding is remitted to the respondent members of the zoning board for further consideration and determination as to whether there shall be a variance allowing change of the existing nonconforming use to another nonconforming use and a statement of the facts and reasons in support thereof so as to permit a judicial review. The merits of granting or refusing a change have not been passed on and the decision to annul the decision of the respondents should not be construed as indicating any opinion. And more particularly the issue of whether section 3 of the ordinance is modified by paragraph (4) of subdivision (d) of section 10 of the ordinance so as to permit the board to authorize structural alterations is not passed on and no opinion in relation thereto is expressed.
It is objected that the board, once having refused a variance, cannot now grant a variance. It is true that a petition for a variance was made orally on June 8,1955. However, no hearing was held, no examination was made of the merits of the application and the petitioner was advised to petition the common council for an amendment of the zoning ordinance. After the common council declined to take favorable legislative action, a subsequent petition was presented to the board on July 13, 1955, and hearings were held on July 13, 1955, August 3, 1955, and August 10, 1955. As the original oral request of June 8th was never entertained on the merits, I think it did not preclude a subsequent petition after adverse action by the common council and does not now preclude action by the board.
Submit order in accordance with the foregoing on three days’ notice.