Clare J. Hoyt, J.
Petitioner has for many years owned a parcel of land in the Town of Greenburgh, containing approximately 17 acres, known as “Fort Hill Country Club” and operates thereon a restaurant and bar, swimming pool, cabanas and other improvements incidental to its operation as a recreation center.
In December, 1962, a portion of the building housing the restaurant and bar was destroyed by fire. Petitioner thereupon filed with the respondent an application for a building permit to replace and repair certain facilities and improvements destroyed by the fire.
The Building Inspector acted upon the application by a letter stating:
“ Tour proposed construction entails the new construction and addition necessary to rebuild and add to your restaurant which was recently substantially destroyed by fire.
“ It is pointed out that this use as a restaurant is and has been deemed to be in a nonconforming status and in view of this and pursuant to ‘ Sec. 8 ’ ‘ Par. E ’ of the Zoning Ordinance of the Town of Greenburgh, your application is hereby denied.”
The Zoning Ordinance, adopted by the town on August 6, 1957, classified the district in which petitioner’s property is located as residential. Prior to the adoption of this ordinance the town sought unsuccessfully to enjoin petitioner’s operation of the property on the ground that it was prohibited by prior ordinances (Town of Greenburgh v. Bobandal Realties, 10 N Y 2d 414). It was then determined that petitioner had a vested nonconforming use, and this status continues.
The Zoning Ordinance, paragraph E of section 8, concerning nonconforming buildings and uses provides as follows: “Any non-conforming building or structure, if destroyed or damaged from any cause, shall not be rebuilt or restored in non-conforming form or location on the lot or for the continuance of a nonconforming use therein, except that such building or structure, if accidently destroyed or damaged due to fire, explosion, or other cause, to the extent of not more than 50% of the volume of such building or structure above the foundations as determined and certified by the Building Inspector, may be rebuilt or restored in substantially the same location provided that (a) it is not enlarged or extended; (b) it complies with height, yard, area and all other requirements of the Schedule applicable to the District in which such lot is situated; and (c) the Board of Appeals grants a variance permitting the restoration and continuance thereof without enlargement or extension of any previously existing non-conforming use therein subject to the *758 provisions of Section 11, Paragraph B of this Ordinance and to such additional limitations and safeguards as the Board of Appeals may deem necessary in the public interest for the protection of nearby conforming uses ’ ’.
The refusal of the Building Inspector to issue the permit prompts this article 78 proceeding wherein petitioner seeks an order directing the Building Inspector to issue the permit to repair and rebuild the premises and to issue a certificate of occupancy upon completion provided the plans and specifications are followed.
The cost of the proposed reconstruction is estimated at $150,000. There was attached to the application a floor plan showing the repairs and rebuilding desired and an affidavit describing the various improvements. The affidavit set forth the volume of the building that was damaged and the volume of other structures devoted to the nonconforming use but not damaged. There was excluded from these computations surface improvements which, of course, have no volume. The affidavit failed to indicate what percentage of the volume of the damaged building was in fact damaged.
The petitioner alleges the use and ownership of the premises, their damage by fire and the denial of the permit to rebuild and the unconstitutionality of the ordinance. The denials of respondent are upon lack of knowledge or information sufficient to form a belief as to the use of the premises by petitioner, the extent of the destruction and the relation of the destroyed structure to remaining structures. The allegations of petitioner as to the unconstitutionality of the provisions of the ordinance are denied. An affirmative defense interposed by respondent asserts that petitioner has failed to exhaust its administrative remedies by applying to the Zoning Board of Appeals for a variance pursuant to the provisions of the Zoning Ordinance. Petitioner has moved under section 1293 of the Civil Practice Act to strike this affirmative defense as insufficient.
The question of the constitutionality of the ordinance may be decided at this time. Petitioner is not required first to apply to the Zoning Board of Appeals for a variance. The Zoning Board of Appeals has no power to hear or determine a question affecting the constitutionality of the Zoning Ordinance. In Matter of Cherry (255 App. Div. 880), petitioner sought a permit in an article 78 proceeding claiming that the refusal to issue one was unconstitutional. The court granted the petition and said: ‘ ‘ Hence, as to these two grounds [which were based on the claim of unconstitutionality] petitioner can obtain no redress from the local board of appeals and is not required to anneal to *759 that body. Such questions may be determined by the court on an application for a mandamus order [citing cases] ”.
In addition, were the petitioner to seek the aid of the Zoning Board of Appeals by asking that body to order a permit for the requested construction, petitioner could then be held to acknowledge the constitutionality of the ordinance (Shepherd v. Mount Vernon Trust Co., 269 N. Y. 234). “ The remedy for attacking the validity of a zoning ordinance is distinguishable in every way from the remedy afforded of securing a variance from a Zoning Board of Appeals. The one is based on right; the other on favor. The one challenges the validity of the ordinance itself; the other must necessarily assume its validity ” [Bronxville Associates v. Brady, 36 N. Y. S. 2d 308, 310).
The ordinance which as a matter of right permits the petitioner to rebuild or restore a nonconforming building or structure only if the damage or destruction does not exceed 50% of the volume of the building or structure above the foundation is unreasonable, confiscatory and unconstitutional.
In prior cases where the constitutionality of similar ordinances has been upheld the damages to or destruction of buildings have been measured in percentages of true value. Zoning ordinances have permitted reconstruction of buildings devoted to nonconforming uses where the damage did not exceed 75% of the actual or true value (Matter of Koeber v. Bedell, 280 N. Y. 692). In Incorporated Vil. of North Hornell v. Rauber (181 Misc. 546), the ordinance prohibited rebuilding where the structure was destroyed to the extent of more than 75% of its assessed valuation. The court in denying an injunction sought by the village determined the extent of the destruction in relation to the true value not only of the structure but of the entire improvement including foundations. After citing cases establishing the proposition that Bauber had a vested right to maintain and operate his sawmill as a pre-existing use which could not be destroyed by any subsequent ordinance, the court said [supra, p. 550): “Did the fire terminate this vested right? Would an injunction deprive Bauber of property without due process of law? However much was destroyed in the fire, a substantial amount in value remained. The wooden floor, walls and roof of the building were burned, but the principal part of the sawmill consisted in the concrete foundation, which was mostly left intact, and the machinery, which suffered no injury to the metal parts.”
The court then reasoned that a determination must be made of the value of the improvements remaining to ascertain the deprivation that would result were reconstruction not permitted. *760 Volume cannot be a substitute for value in determining the value of that which remains. A building of large dimensions with few or inexpensive improvements in the part destroyed may have the large part (volume wise) so destroyed, and yet have a smaller portion remain undamaged that represents a large investment and great value. To thus measure damages on the basis of volume does not afford the property owner the protection which he is afforded under those statutes using value as a criterion. The important consideration is not so much what was destroyed but what is left which may be valueless if the reconstruction is not permitted so that the nonconforming use may be continued. It is likewise unreasonable to exclude the foundation or any improvements below the level thereof from the formula which presently prescribes the conditions for permission to rebuild. Depending upon the type of the enterprise and the nature of the nonconforming use, basements, foundations and other improvements below grade may have substantial value which should not be excluded from consideration.
Although it is not clear from petitioner’s application just what percentage of the volume of the building was destroyed, and even though petitioner could show that as a result of the fire in December, 1962 there was not a destruction of 50% of the volume of the building, petitioner may seek this review of the ordinance and a determination of its constitutionality. In Dowsey v. Village of Kensington (257 N. Y. 221, 228): “ The plaintiff contends that the rule itself is invalid and that its existence seriously affects the value of her property. She may desire to sell her property rather than to erect a business building on it and the existence of a rule which would require a purchaser to take subject to the risk that a ‘ special privilege ’ may not be granted, or if granted may be burdened by onerous conditions, must seriously affect the present market value of her property. ‘ Assuming the premises, the existence and maintenance of the ordinance, in effect, constitutes a present invasion of the appellee’s property rights and a threat to continue it. Under these circumstances, the equitable jurisdiction is clear. ’ (Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 386.) ”
The provision in the ordinance providing that the premises if rebuilt or restored may be rebuilt or restored in substantially the same location provided it is not enlarged or extended is a reasonable requirement.
The requirement that upon rebuilding or restoration there be compliance with height, yard, area and other requirements of the schedule applicable to the district may be in conflict with *761 the right of petitioner to rebuild or restore. The Zoning Board of Appeals in considering the application for the variance must consider this right of the petitioner to rebuild or restore and these requirements of the district and grant relief or variances from the latter if their strict enforcement would deprive petitioner of its right to rebuild or restore.
The respondent is thus directed to revoke his denial of petitioner’s application and petitioner may proceed with its application which shall be processed in accordance with this opinion.